IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JASON A. GOODWIN, Plaintiff, | ) | |
| v. | ) | C.A. No. 26-472-GBW-EGT |
| LT. EISENBRAUM et al., Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jason A. Goodwin, an inmate at James T. Vaughn Correctional Center, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). For the reasons set forth below, the Court recommends that service proceed as to Defendants Eisenbraum, Gregor and Moore in their individual capacities on the Eighth Amendment excessive force and common law battery claims, that all remaining individual capacity claims against Defendants Eisenbraum, Gregor, Moore, Carter, Gonzalez, Harris, Zack, Warden Brian Emig, Bureau Chief Robert May and Commissioner Terra Taylor (collectively, "Defendants") be DISMISSED WITHOUT PREJUDICE and that Plaintiff's official capacity claims for money damages be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Plaintiff claims that, on April 11, 2025, he was having a mental breakdown and told Defendant Eisenbraum that he wanted to see mental health. (D.I. 3 at 6). Defendant Eisenbraum denied that request and then sprayed "a whole can" of "capstun" pepper spray under Plaintiff's cell door. (*Id.*). Plaintiff renewed his request to visit mental health (again denied), after which Defendant Gregor apparently shot "alot of rounds of paintball" at Plaintiff in his cell and then

closed the cell door. (*See id.*). The Quick Response Team ("QRT") stormed Plaintiff's cell and assaulted Plaintiff in some unspecified manner. (*Id.*). After the QRT team ultimately restrained Plaintiff with handcuffs, Defendant Gregor shot Plaintiff in his buttocks with a paintball gun. (*Id.*).

Plaintiff was ultimately transferred to the Psychiatric Close Observation tier. (D.I. 3 at 6). Once there, Defendants Harris, Zack and Gonzalez cut off Plaintiff's clothes while he was lying face down, and Defendant Carter allegedly grabbed Plaintiff's bare buttocks. (*Id.* at 6-7). Plaintiff requested to visit mental health again and then flooded his holding cell. (*Id.* at 7). Defendants Gregor and Moore responded and ended up shooting Plaintiff with rubber bullets and deploying a flashbang. (*See id.*). Plaintiff was escorted off the tier "butt naked" into the barbershop within the same building. (*Id.*). There, an unidentified officer apparently bent Plaintiff over, put wet fingers in Plaintiff's ear and gyrated their hips into Plaintiff's bare buttocks. (*Id.*). Plaintiff was then returned to his cell, which remained "filled with mace." (*Id.*). Plaintiff further alleges that at some point, "[a]ll Defendants" took his legal documents relating to this Complaint. (*Id.*). Plaintiff sustained multiple physical injuries to his lower back and wrist, eye damage due to pepper spray to the face, mental anguish, anxiety, humiliation and embarrassment. (D.I. 3 at 8).

Plaintiff alleges various constitutional claims against Defendants Eisenbraum, Gregor, Moore, Carter, Gonzalez, Harris and Zack based on their involvement in the foregoing events, as well as Warden Brian Emig, Bureau Chief Robert May, and Commissioner Terra Taylor for failing to train the correctional officers. (*Id.* at 7). Plaintiff sues Defendants in their individual and official capacities and seeks monetary damages. (*Id.* at 1 & 9).

## II. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (civil actions filed by prisoners seeking redress from governmental entities or government officers and employees). The Court must accept all factual allegations in a complaint as true and view them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson*

*v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Warden Emig, Bureau Chief May and Commissioner Taylor

Plaintiff alleges that Defendants Warden Brian Emig, Bureau Chief Robert May and Commissioner Terra Taylor failed to train correctional officers on "one-on-one confrontations." (D.I. 3 at 7). Plaintiff also alleges that Defendant Emig failed to take action to "curb the known pattern of physical and sexual assault of inmates by corrections officers."[1] (D.I. 3 at 8). To state a failure-to-train claim under § 1983, a plaintiff must allege that the supervisor's failure to train employees amounts to "deliberate indifference to the rights of persons with whom the untrained employees came into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up). A plaintiff "must identify a failure to provide specific training that has a causal nexus with their

[1] To the extent Plaintiff is alleging that Warden Emig is indirectly liable based on the conduct of his subordinate correctional officers, § 1983 does not allow *respondeat superior* liability. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

injuries and must demonstrate that the absence of that training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Plaintiff's conclusory assertion that defendants failed to train their officers is insufficient to state a plausible claim for relief. *See Sullins v. Phelps*, C.A. No. 19-153-RGA, 2020 WL 550833, at *3 (D. Del. Feb. 4, 2020). The Court thus recommends that these defendants and claims be dismissed.

**B. Eighth Amendment Claims**

1. Mental Health Treatment

Plaintiff asserts that he requested "mental health" services from various correctional officers but those requests were denied. (D.I. 3 at 6-7). Plaintiff appears to be alleging a denial of adequate mental health and medical treatment. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To state a deliberate indifference claim under § 1983, an inmate must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Nowhere in the Complaint does Plaintiff describe inadequate medical treatment, delay or complete denial of medical care. Rather, Plaintiff alleges that he was moved from his cell to the psychiatric observation tier and then back, indicating that someone did act in response to Plaintiff's mental health needs. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (no deliberate indifference for failing to directly act when the plaintiff was already receiving medical

treatment). As such, the Court recommends that all of Plaintiff's deliberate indifference claims be dismissed.

2. Excessive Force

Plaintiff also alleges that various Defendants used excessive force in moving Plaintiff from his cell to the psychiatric observation tier and back. "The core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Abraham v. Costello*, 717 F. Supp. 2d 391, 396 (D. Del. 2010) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). To analyze the officer's intent, the Court considers five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (cleaned up). The objective component of the excessive force inquiry is satisfied when "the inmate's injury was more than de minimis." *Id.*

Here, Plaintiff plausibly alleges excessive force claims against Defendants Eisenbraum, Gregor and Moore. Plaintiff alleges that Eisenbraum sprayed a whole can of pepper spray under Plaintiff's cell door. (D.I. 3 at 6). "[E]mptying a can of pepper spray on [an] inmate . . . does not seem reasonable as a matter of law." *O'Neil v. Del. Dep't of Corrections*, C.A. No. 20-319-LFR, 2022 WL 2702395, at *3-4 (D. Del. July 12, 2022) (Restrepo, J., sitting by designation). Plaintiff thus states an excessive force claim against Eisenbraum. As to Gregor, Plaintiff alleges that Gregor shot several rounds of paintball at Plaintiff before leaving him in his cell, only to return and shoot

Plaintiff in the buttocks after he had been restrained. (D.I. 3 at 6). This is sufficient to state an excessive force claim against Gregor. *See Giles v. Kearney*¸ 571 F.3d 318, 327-28 (3d Cir. 2009) (finding force used on restrained, non-resisting inmate excessive). And finally, Plaintiff alleges that Gregor and Moore opened Plaintiff's cell door and shot him with rubber bullets in response to Plaintiff attempting to flood his cell. (*See* D.I. 3 at 6). He was then apparently subjected to a flashbang. (*Id.*). Liberally construed, these allegations plausibly support an inference that Moore and Gregor used excessive force in response to Plaintiff flooding his cell. *See Moore v. Rosa*, C.A. No. 21-933, 2021 WL 1143376, at *3 (E.D. Pa. Mar. 25, 2021). Based on the facts alleged, the Court recommends that service proceed as to Eisenbraum, Gregor and Moore on Plaintiff's Eighth Amendment excessive force claims.

As to the remaining defendants, Plaintiff fails to state an excessive force claim against Defendants Harris, Zack, Gonzalez and Carter. After Plaintiff was transferred to the psychiatric observation tier, Defendants Harris, Zack and Gonzalez cut off Plaintiff's clothes while he was lying face down, and Defendant Carter grabbed Plaintiff's bare buttocks. (D.I. 3 at 6-7). These actions were done immediately after Plaintiff stated he was suicidal. (D.I. 3 at 6). In this context, Plaintiff's allegations do not plausibly suggest that the officers acted with the requisite subjective intent but rather acted to maintain order and protect inmate safety. *Brown v. GEO Grp., Inc.*, C.A. No. 19-1971, 2020 WL 4529881, at *5 (E.D. Pa. July 31, 2020); *see also Scholl v. Harry*, C.A. No. 2:25-6257-JDW, 2026 WL 1690013, at *4 (E.D. Pa. June 10, 2026) (no claim for excessive force where officer cut off inmate's clothes after inmate failed to comply with officer's demand

for a strip search). The excessive force claims against Defendants Harris, Zack, Gonzalez and Carter should be dismissed.[2]

3. Sexual Assault

Plaintiff brings a claim for "Sexual harassment/sexual assault." (D.I. 3 at 6). Sexual abuse of an inmate by a corrections officer may violate the Eighth Amendment. *See Ricks*, 891 F.3d at 473. "As with other Eighth Amendment claims, 'the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind.'" *Drumgo v. Kuschel*, 811 F. App'x 115, 118 (3d Cir. 2020) (quoting *Ricks*, 891 F.3d at 475). As to the subjective prong, courts consider whether the official had a legitimate penological purpose or instead acted "maliciously and sadistically for the very purpose of causing harm." *Ricks*, 891 F.3d at 475 (cleaned up). And "[w]hen deciding objective harm, 'not . . . every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Objectively serious sexual contact includes "sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. *Ricks,* 891 F.3d at 478.

Plaintiff alleges that Defendant Carter grabbed his "bare buttocks" and that an unnamed individual "ben[t] Plaintiff over[,] put wet fingers in his ear[,] and gyrated their hips into Plaintiff's bare buttocks." (D.I. 3 at 7). Although sexual misbehavior is deplorable, the facts alleged here do not state an Eighth Amendment sexual abuse violation.[3] *Cf. McIntyre v. Kellinger*, 741 F. App'x

---

[2] Defendant Carter's purported grabbing of Plaintiff's buttocks is not alleged to be more than a *de minimis* amount of force and thus is not excessive force. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

[3] Additionally, the Complaint does not specify who came up behind Plaintiff while he was naked. (*See* D.I. 3 at 7). That is a separate basis to dismiss the claim based on that conduct. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

891, 893 (3d Cir. 2018) (no Eighth Amendment violation where corrections officer dragged his hands down an inmate's buttocks and gripped and squeezed the buttocks while whispering "in a sexual manner" during a pat-down search because not objectively severe or serious to establish an Eighth Amendment violation). The Court recommends the sexual abuse claims be dismissed.

4. Failure to Intervene or Protect

Plaintiff alleges failure to protect and failure to intervene claims. (*See* D.I. 3 at 6). But the Court cannot locate in the Complaint any facts to support either type of claim. A failure to protect claim relates to correctional officers who fail to protect an inmate from ***another*** inmate. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). But no other inmates are mentioned in the Complaint. (*See* D.I. 3 at 6-8). The failure to protect claim should thus be dismissed. And as to the failure to intervene claims, Plaintiff alleges that two groups of individuals were present when force were used: (1) the QRT Team when Defendant Gregor shot Plaintiff with paintballs while he restrained and (2) Defendants Harris, Zack and Gonzalez when Defendant Carter grabbed Plaintiff's buttocks. (*See id.* at 6-7). Regarding the first group, Plaintiff does not allege any facts indicating that Defendant Gregor shot Plaintiff for a prolonged period of time such that the QRT team members reasonably could have reacted. *Bistrian*, 696 F.3d at 371. And for Defendants Harris, Zack and Gonzalez, there can be no failure to intervene when the underlying incident is not a constitutional violation. *See Smith v. Mesinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). The Court therefore recommends that Plaintiffs' failure to protect claims also be dismissed.

**C. Other Claims**

1. Seizure of Legal Materials

In his Complaint, Plaintiff lodges the bare assertion that all Defendants took his legal documents relating to these events. (D.I. 3 at 6). As to the alleged destruction of legal materials,

"many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (cleaned up). That being said, a violation of the First Amendment right of access to the courts is only established where a litigant shows that they were actually injured by the denial of access. The "actual injury" requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). And an actual injury is shown only where a non-frivolous arguable claim is lost. *Christopher*, 536 U.S. at 415. Here, Plaintiff asserts in a barebones fashion that unspecified defendants took his legal documents. That is not enough to plead that Plaintiff was prevented from presenting a non-frivolous claim.[4] The Court thus recommends dismissal of Plaintiff's legal-document seizure claim.

2. <u>First Amendment Retaliation</u>

The Complaint refers to "Retaliation" in violation of the First Amendment. (D.I. 3 at 6). To establish a retaliation claim, a plaintiff must allege that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him." *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). To the extent that Plaintiff is attempting to allege retaliation for seeking medical care, he pleads no

---

4 In fact, Plaintiff alleges that the documents taken were related to filing this Complaint. (D.I. 3 at 7). It thus appears likely that any such claim will not arise until after this lawsuit is finished, if such a claim ever does arise. *Cf. Atwell v. Metterau*, 255 F. App'x 655, 658 (3d Cir. 2007) ("Although Atwell asserted that his litigation efforts in several cases were impeded, the dockets for those cases reflect that one case is still being litigated and the others could not have been affected by the alleged taking of documents. . . . He has not alleged an actual injury resulting from the loss of his legal papers.").

facts to support such a claim against any defendant. The Court recommends that the retaliation claim be dismissed.

3. Assault and Battery

The Complaint lists "Assault and Battery" as a claim. (D.I. 3 at 8). The Court construes this to be a claim for common law battery.[5] To state such a claim of battery, Plaintiff must allege that the officer intentionally initiated contact with Plaintiff that resulted in harmful or offensive contact without his consent. *See Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995).

Because the claims of battery and excessive force are based on the same facts, Plaintiff should be allowed to proceed with the battery claims against Defendants Eisenbraum, Gregor and Moore.[6] *See, e.g.*, *Robinson v. Danberg*, 729 F. Supp. 2d 666, 689-90 (D. Del. 2010); *Looney v. City of Wilmington*, 723 F. Supp. 1025, 1037 (D. Del. 1989). The claim against Defendant Carter is a closer call. Plaintiff has adequately alleged an intentional act – grabbing – and it is reasonable to infer that such conduct offended Plaintiff. But Plaintiff is required to allege facts that would strip Defendant Carter of the immunity he is afforded as a state employee under the Delaware State Tort Claims Act. DEL. CODE ANN. tit. 10 § 4001 (state employees exempted from negligence liability if complained-of act (1) related to official duties, (2) was performed under good faith belief that public interest would be served by act and (3) was done without gross and wanton

5 Plaintiff never alleges that he was ever put in fear, which is required for a claim of assault. *Jagger v. Schiavello*, 93 A.3d 636, 660 n.12 (Del. Super Ct. 2014). Plaintiff's complaint appears focused on excessive force and sexual assault claims. The Court thus focuses on those claims, which are more properly characterized as battery – not assault. *See Jackson v. Dameron*, 171 F.4th 641, 650 (4th Cir. 2026) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

6 Plaintiff necessarily also alleges a loss of Delaware State Tort Claims Act immunity. *See Green v. Poorman*, C.A. No. 20-85-SRF, 2022 WL 608965, at *7 (D. Del. Feb. 17, 2022) ("Like an excessive force claim, both the second and third elements of the statutory immunity defense require an inquiry into the subjective intent of the officer."); *see also* DEL. CODE ANN. tit. 10 § 4001.

negligence); *Smith v. Angelo*, C.A. No. 14-1066-GMS, 2017 WL 2276985, at *10 (D. Del. May 25, 2017) (plaintiff must allege facts that negate one of the requirements). Plaintiff fails to allege any facts that plausibly suggest that Carter grabbing him was not done in the public interest. Any claim of battery asserted against Carter should therefore be dismissed.

4. Conspiracy

The Complaint contains a single sentence alleging a conspiracy. (D.I. 3 at 7). As pled, Plaintiff fails to plausibly allege – with sufficient factual material – that Defendants acted in concert to deprive Plaintiff of any constitutional rights. Bald assertions and legal conclusions are insufficient. *Iqbal*, 556 U.S. at 679. The Court recommends the conspiracy claim be dismissed. *See Sullins v. Phelps*, C.A. No. 19-153-RGA, 2020 WL 550833, at *2-3 (D. Del. Feb. 4, 2020).

**E. Damages**

Plaintiff sues Defendants in their individual and official capacities but seeks only monetary damages. (D.I. 3 at 9). Eleventh Amendment sovereign immunity prohibits Plaintiff from seeking monetary damages from Delaware state officials in their official capacities. *See Carter v. James T. Vaughn Corr. Ctr.*, 134 F. Supp. 3d 794, 799-800 (D. Del. 2015). All of Plaintiff's official capacity claims against Defendants should be dismissed.

* * *

As set forth above, the Court recommends that Plaintiff's excessive force and battery claims against Defendants Eisenbraum, Gregor and Moore in their individual capacities be allowed to proceed and that service be effectuated accordingly; the remainder of Plaintiff's claims should be dismissed. Plaintiff's official capacity claims against Defendants for money damages should be dismissed with prejudice because amendment would be futile in light of sovereign immunity. As to the remaining dismissed claims, the Court is unable to conclude at this point that amendment would be futile and, as such, recommends that these claims be dismissed with leave to amend. In

any amended pleading, Plaintiff should restate all claims (without reference to previously filed pleadings), clearly indicate the claims he is pursuing against each defendant and set forth facts that plausibly support those claims.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that (1) Plaintiff's Eighth Amendment excessive force and common law battery claims against Defendants Eisenbraum, Gregor and Moore in their individual capacities be allowed to proceed and (2) Plaintiff's official capacity claims for money damages be DISMISSED WITH PREJUDICE and (3) all of Plaintiff's remaining claims be DISMISSED WITHOUT PREJUDICE. The Court further recommends that Plaintiff be given thirty (30) days from the date this Report and Recommendation is adopted to file an amended pleading or service shall proceed on the surviving claims.

Plaintiff may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(a); *see also* FED. R. CIV. P. 6(d). Objections are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: August 21, 2026

UNITED STATES MAGISTRATE JUDGE